IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Benchmark Insurance Company,<br><br>                            Plaintiff,<br><br>v.<br><br>SUNZ Insurance Company; SUNZ Insurance Solutions, LLC; United Wisconsin Insurance Company a/k/a the Accident Fund Group; Aviator Holdings LLC; Barton Staffing Solutions, Inc.; Business Insurers of Georgia, Inc.; Butler America Holdings Inc.; Carolina's Construction Solutions LLC; Century Employer Organization, LLC; CJ Kant Resource Group, LLC; Cohesive Networks, Inc.; Cornerstone Capital Group, Inc.; Cortech, LLC; Decision HR Holdings, Inc.; Diverse Staffing, Inc.; E3 HR, Inc.; Employco USA, Inc.; Essential HR, Inc.; Harbor America Holdings, Inc.; Howard Leasing, Inc.; HR Service Group LLC; Impact Outsourcing Solutions, Inc.; Impact Staff Leasing, Inc.; Innerstaff; IS Development Group, LLC; Lightsource Holdings, LLC; Payday, Inc.; PRO Resources, Corporation; Resourcing Edge I, LLC; ProStaff Solutions, LLC; Quality Business Solutions, Inc.; Staff Pro, LLC; Team Company, Inc.; Total Staffing Solutions, LLC; and Waste Collection, Inc.<br><br>                            Defendants. | Case No. 20-cv-00908<br><br>**COMPLAINT** |

For its Interpleader Complaint, Plaintiff Benchmark Insurance Company ("Benchmark") states and alleges as follows:

## Nature of the Action

1. In 2015, Benchmark appointed SUNZ Insurance Solutions ("SIS") as its agent to issue workers' compensation insurance policies, and administer the policies, on Benchmark's behalf. SIS was required to act in good faith and use its best effort to protect Benchmark's interests.

2. The insurance policies that SIS issued on Benchmark's behalf are known as large-deductible policies. As an express condition of insurance coverage, the insureds were required to post, and SIS was required to collect, cash or cash-equivalent collateral to secure their obligations to pay claims within the deductible.

3. Benchmark has conducted an analysis and evaluation of the collateral levels and has determined that it is currently holding $20,533,594 in excess collateral ("Excess Collateral") posted by Benchmark's insureds. But as explained in greater detail below, multiple parties—including SIS, SUNZ Insurance Company, Benchmark insureds, and the United Wisconsin Insurance Company—all do or may claim an entitlement to some portion of this Excess Collateral. Benchmark reasonably fears that it would be subject to multiple claims if it released the Excess Collateral to any of the Defendants.

4. Accordingly, Benchmark now brings this interpleader action so that Benchmark may deposit with the Court $20,533,594 of Excess Collateral, thus

allowing the Defendants to litigate the issue of how the funds should be allocated between and among themselves while discharging Benchmark from any and all liability in connection with the release of said funds.

## Parties

5. Benchmark is an insurance company incorporated under the laws of the State of Kansas, with its principal place of business in Wayzata, Minnesota.

6. SUNZ Insurance Company ("SUNZ") is a regional insurance company affiliated with SIS. SUNZ is incorporated under the laws of the State of Florida, with its principal place of business in Bradenton, Florida. SUNZ has alleged that Benchmark is holding excess collateral and has demanded that Benchmark pay all of the alleged excess collateral—including the $20,533,594 that Benchmark has determined is available for release—to SUNZ instead of to the insureds who posted it.

7. SIS is a limited liability company incorporated under the laws of the State of Florida, with its principal place of business in Bradenton, Florida. SIS is a program manager for various insurance programs, including the Benchmark program discussed above. As Benchmark's agent, SIS collected Deductible Collateral from Benchmark's insureds. Accordingly, SIS does or may claim, for itself or an affiliated company, an entitlement to some portion of the $20,533,594 in Excess Collateral that Benchmark has determined is available for release.

8. United Wisconsin Insurance Company a/k/a the Accident Fund Group ("the AF Group") is an insurance company based in New Berlin, Wisconsin. On information and belief, the AF Group specializes in workers' compensation insurance and has partnered with SIS to issue such policies to various insureds, including Benchmark's insureds. As discussed in greater detail below, given SIS and SUNZ's commingling of funds collected pursuant to different insurance policies, the AF Group may claim an entitlement to some portion of the $20,533,594 in Excess Collateral that Benchmark has determined is available for release.

9. The following insureds (hereinafter collectively "Benchmark Insureds") were issued Benchmark large-deductible workers' compensation insurance policies by SIS; have posted more collateral than is presently required to secure their obligations; and thus do or may claim an entitlement to some portion of the $20,533,594 in Excess Collateral that Benchmark has determined is available for release:

    a. Aviator Holdings LLC (principal place of business in Loveland, Ohio);

    b. Barton Staffing Solutions, Inc. (principal place of business in Arora, Illinois);

    c. Business Insurers of Georgia, Inc. (principal place of business in Atlanta, Georgia);

d. Butler America Holdings Inc. (principal place of business in Santa Barbara, California);

e. Carolina's Construction Solutions LLC (principal place of business in Charlotte, North Carolina);

f. Century Employer Organization, LLC (principal place of business in Sarasota, Florida);

g. CJ Kant Resource Group, LLC (principal place of business in Visalia, California);

h. Cohesive Networks, Inc. (principal place of business in Tampa, Florida);

i. Cornerstone Capital Group, Inc. (principal place of business in Maple Shade, New Jersey);

j. Cortech, LLC (principal place of business in Atlanta, Georgia);

k. Decision HR Holdings, Inc. (principal place of business in St. Petersburg, Florida);

l. Diverse Staffing, Inc. (principal place of business in Indianapolis, Indiana);

m. E3 HR, Inc. (principal place of business in Summit, New Jersey);

n. Employco USA, Inc. (principal place of business in Westmont, Illinois);

o. Essential HR, Inc. (principal place of business in Dallas, Texas);

p. Harbor America Holdings, Inc. (principal place of business in Porter, Texas);

q. Howard Leasing, Inc. (principal place of business in Bradenton, Florida);

r. HR Service Group LLC (principal place of business in Burtonsville, Maryland);

s. Impact Outsourcing Solutions, Inc. (principal place of business in Griffin, Georgia);

t. Impact Staff Leasing, Inc. (principal place of business in Jupiter, Florida);

u. Innerstaff (principal place of business in Spring, Texas);

v. IS Development Group, LLC (principal place of business in Atlanta, Georgia);

w. Lightsource Holdings, LLC (principal place of business in Orlando, Florida);

x. Payday, Inc. (principal place of business in Pensacola, Florida);

y. PRO Resources, Corporation (principal place of business in Detroit Lakes, Minnesota);

z.   Resourcing Edge I, LLC (principal place of business in Rockwall, Texas);

aa.  ProStaff Solutions, LLC (principal place of business in Woodbridge, New Jersey);

bb.  Quality Business Solutions, Inc. (principal place of business in Travels Rest, South Carolina)

cc.  Staff Pro, LLC (principal place of business in Gulfport, Mississippi);

dd.  Team Company, Inc. (principal place of business in Troy, Illinois);

ee.  Total Staffing Solutions, LLC (principal place of business in Naperville, Illinois); and

ff.  Waste Collection, Inc. (principal place of business in Margate, Florida).

**Jurisdiction and Venue**

10. This is an action in interpleader under 28 U.S.C. §§ 1335 and 2361. This Court has subject-matter jurisdiction under 28 U.S.C. § 1335 because more than two of the above-referenced Defendants/claimants are of diverse citizenship and the amount in controversy exceeds $500.

11. This Court may exercise personal jurisdiction over all the above-referenced Defendants/claimants under 28 U.S.C. § 2361.

7

12. Venue is proper in this Court under 28 U.S.C. § 1397 because at least one Defendant/claimant (PRO Resources) resides in Minnesota.

## Factual Allegations

*Background*

13. In 2015, Benchmark appointed SIS to serve as its agent to underwrite and issue workers' compensation insurance policies on Benchmark's behalf. As Benchmark's agent, SIS issued Benchmark policies to each of the Benchmark Insureds.

14. The Benchmark policies that SIS issued to Benchmark Insureds are what is known as large-deductible policies, pursuant to which the insureds are responsible for claims within the deductible. Importantly, as a condition of insurance coverage, Benchmark required the insured to post sufficient cash or cash-equivalent collateral to secure the insured's obligations for claims within the deductible. Benchmark will refer to this collateral as "Deductible Collateral."

15. Also in 2015, SUNZ and Benchmark entered into a reinsurance contract, pursuant to which Benchmark ceded to SUNZ all of the premiums and losses on the policies that SIS issued on Benchmark's behalf. The reinsurance contract does not, however, relieve Benchmark of its obligations to the Benchmark Insureds.

16. The Benchmark-SIS relationship ended in 2018. No new insurance policies have been issued, and no policies have been renewed, since that time. But

Benchmark Insureds are still allowed to make claims that arose during the coverage period.

17. On information and belief, the AF Group has appointed SIS to issue large-deductible workers' compensation policies on its behalf. Also, on information and belief, the AF Group has entered into a reinsurance contract with SUNZ, pursuant to which SUNZ accepted the premiums and losses of the AF Group policies issued by SIS. On information and belief, many (perhaps all) of the Benchmark Insureds are now the AF Group's insureds.

*SIS and SUNZ's commingling of funds*

18. SUNZ and SIS maintain that they have the right to commingle and use Deductible Collateral posted by a particular insured for *any and all* obligations of that insured, including obligations arising under different insurance policies issued by different insurance carriers. For example, according to SUNZ and SIS, if a specific Benchmark Insured has posted collateral for its Benchmark policies, SUNZ and SIS may use the funds to pay claims and satisfy obligations arising under that insured's AF Group policies. And if a specific AF Group insured has posted collateral for its AF Group policies, SUNZ and SIS believe that they may use the funds to pay claims and satisfy obligations arising under that insured's Benchmark policies.

19. SUNZ has alleged that SUNZ paid claims within the deductible on behalf of certain Benchmark Insureds, and SUNZ has demanded that Benchmark

release Deductible Collateral to reimburse SUNZ for its alleged out-of-pocket payments. Given SIS and SUNZ's admitted commingling of funds, SUNZ may have paid these claims on behalf of certain Benchmark Insureds using premiums and/or collateral collected in connection with the AF Group policies.

20.  Benchmark has explained to SUNZ that it cannot release excess Deductible Collateral of any *specific* Benchmark Insured to SUNZ without the permission of that *specific* insured who provided "too much" collateral to Benchmark in the first place. Furthermore, SUNZ and SIS cannot commingle the collateral posted by Benchmark Insureds for Benchmark policies with collateral and funds related to different policies issued by different insurance carriers such as the AF Group.

*Excess Collateral*

21.  Benchmark has conducted a collateral evaluation and determined that it is holding $20,533,594 in Excess Collateral attributable to 32 Benchmark Insureds as follows:

| Insured | Collateral Returnable |
|---|---|
| Aviator - ¶ 9(a) | $381,391 |
| Barton – ¶ 9(b) | $170,407 |
| Business Insurers – ¶ 9(c) | $4,552,079 |
| Butler – ¶ 9(d) | $271,918 |
| Carolinas – ¶ 9(e) | $57,063 |
| Century – ¶ 9(f) | $1,003,844 |
| CJ Kant – ¶ 9(g) | $1,299,387 |
| Cohesive – ¶ 9(h) | $1,894,497 |
| Cornerstone – ¶ 9(i) | $64,982 |

10

| | |
|---|---|
| CorTech – ¶ 9(j) | $722,292 |
| Decision HR – ¶ 9(k) | $747,999 |
| Diverse – ¶ 9(l) | $30,466 |
| E3 HR – ¶ 9(m) | $264,920 |
| Employco – ¶ 9(n) | $132,648 |
| Essential – ¶ 9(o) | $1,485,474 |
| Harbor – ¶ 9(p) | $189,167 |
| Howard – ¶ 9(q) | $326,339 |
| HR Service – ¶ 9(r) | $1,109,708 |
| Impact Out. – ¶ 9(s) | $134,766 |
| Impact Staff – ¶ 9(t) | $135,293 |
| Innerstaff – ¶ 9(u) | $72,375 |
| IS Dev. – ¶ 9(v) | $802,238 |
| Lightsource – ¶ 9(w) | $481,754 |
| Payday – ¶ 9(x) | $4,352 |
| PRO Resources– ¶ 9(y) | $1,255,201 |
| Resourcing – ¶ 9(z) | $838,550 |
| Pro Staff – ¶ 9(aa) | $548,489 |
| Quality – ¶ 9(bb) | $59,489 |
| Staff – ¶ 9(cc)` | $450,640 |
| Team – ¶ 9(dd) | $878,030 |
| Total – ¶ 9(ee) | $81,297 |
| Waste – ¶ 9(ff) | $85,749 |
| **Total Excess Collateral** | **$20,533,594** |

22.     Given SUNZ's admitted commingling of collateral between and among different insurance policies, the AF Group may also claim an entitlement to some of the Excess Collateral.

23.     SUNZ has served an arbitration demand on Benchmark. The demand sought, among other things, an order requiring "Benchmark to release no less than $50.5 million to SUNZ in [e]xcess [c]ollateral under the terms of the Reinsurance

11

Contract." The amount sought includes the $20,533,594 in Excess Collateral collected by SIS from the Benchmark Insureds.[1]

24. Benchmark stands ready to release $20,533,594 in Excess Collateral, but in the absence of informed consent by each of the Benchmark Insureds and the AF Group authorizing the release of excess funds to SUNZ, Benchmark has commenced this action so that each Defendant may litigate its entitlement to the funds.

## Count I
## (Interpleader)

25. Benchmark repeats and realleges the allegations in the above paragraphs as if fully set forth herein.

26. The Defendants have adverse and competing claims to some portion of the $20,533,594 in Excess Collateral that Benchmark has determined is available for release.

27. Benchmark reasonably fears being subjected to multiple claims from different parties if it were to release all or any portion of the Excess Collateral to one or more of the Defendants.

---

[1] SUNZ's arbitration demand is the subject of Benchmark's separate lawsuit in which Benchmark seeks declaratory and injunctive relief, prohibiting SUNZ from seeking to arbitrate issues that the parties never agreed to arbitrate.

28.     Benchmark is prepared to deposit $20,533,594 with the Court and seeks permission from the Court to deposit said funds with the Court's Registry, so that the Defendants may litigate the issue of how the Excess Collateral should be allocated between and among them. Upon depositing $20,533,594 with the Court's Registry, Benchmark is entitled to an order discharging it from any further liability with respect to said funds.

29.     Further, under 28 U.S.C. § 2361, Benchmark asks the Court to enjoin any of the above-referenced Defendants from prosecuting any claims or suits against Benchmark in any forum or venue related to the $20,533,594, including but not limited to SUNZ's pending arbitration demand for the release of excess collateral.

**Prayer for Relief**

WHEREFORE, Benchmark prays for relief from the Court as follows:

A.     Granting Benchmark permission to deposit $20,533,594 in Excess Collateral with the Court's Registry;

B.     Ordering and commanding each of the Defendants to interplead its claims to the $20,533,594, and discharging Benchmark for any and all liability in connection with said funds;

C.     Injunctive relief enjoining SUNZ or any other Defendants from prosecuting any claims or suits (including in arbitration) against Benchmark affecting any part of the $20,533,594 in Excess Collateral;

D. Awarding Benchmark such other, further, and different relief as the Court deems just and equitable, including but not limited to reasonable attorneys' fees and costs incurred in bringing this interpleader action.

Dated: April 9, 2020   **GREENE ESPEL PLLP**

 s/ X. Kevin Zhao
Lawrence M. Shapiro, P.A., Reg. No. 0130886
X. Kevin Zhao, Reg. No. 0391302
Anna M. Tobin, Reg. No. 0395706
222 S. Ninth Street, Suite 2200
Minneapolis, MN  55402
lshapiro@greeneespel.com
kzhao@greeneespel.com
atobin@greeneespel.com
(612) 373-0830

Attorneys for Benchmark Insurance Company