# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

---

BENCHMARK INSURANCE COMPANY,

                                    Plaintiff,            No. 20-908 (JRT/TNL)

v.

SUNZ INSURANCE COMPANY; SUNZ          **MEMORANDUM OPINION AND ORDER**
INSURANCE SOLUTIONS, LLC; UNITED
WISCONSIN INSURANCE COMPANY;
BUTLER AMERICA HOLDINGS INC.;
CENTURY EMPLOYER ORGANIZATION,
LLC; PAYDAY INC.,

                                    Defendants.

---

Anna Tobin, Lawrence M. Shapiro, Mark L. Johnson, and X. Kevin Zhao,
**GREENE ESPEL PLLP,** 222 South Ninth Street, Suite 2200, Minneapolis, MN
55402 for plaintiff.

Anne M. Lockner, **ROBINS KAPLAN LLP**, 800 LaSalle Avenue, Suite 2800,
Minneapolis, MN 55402, Christopher Stephen Carver and Jason Samuel
Oletsky, **AKERMAN LLP**, 350 East Las Olas Boulevard, Suite 1900, Fort
Lauderdale, FL 33301, for defendants SUNZ Insurance Company, SUNZ
Insurance Solutions, LLC, and United Wisconsin Insurance Company.

Mitchel Krouse, **THE KROUSE LAW FIRM**, 9040 Town Center Parkway,
Lakewood Ranch, FL 34202, Jessica C. Richardson, Kelly P. Magnus, and Rolf
E. Sonnesyn, **TOMSCHE, SONNESYN & TOMSCHE, PA**, 8401 Golden Valley
Road, Suite 250, Minneapolis, MN 55427, for defendants Butler America
Holdings, Inc., Century Employer Organization, LLC, and Payday, Inc.

Plaintiff Benchmark Insurance Company filed an Interpleader Action arising out of

a dispute between Benchmark and Defendants SUNZ Insurance Company ("SUNZ"), SUNZ

Insurance Solutions, LLC ("SIS"), and various insureds over the dispensation of excess collateral held by Benchmark.  The Interpleader Action named 35 defendants, some insurance companies, and some insured parties ("Defendant-Insureds"), who may possibly claim some interest in the interpleaded funds.

Two of those Defendant-Insureds—Century Employer Organization, LLC and Payday, Inc.—filed crossclaims against SUNZ, and a third—Butler America Holdings, Inc.—filed crossclaims against United Wisconsin Insurance Company ("UWIC"), a SUNZ affiliate. SUNZ and UWIC filed a Motion to Dismiss, or in the Alternative, to Compel Arbitration of the Crossclaims.  Butler then voluntarily dismissed its crossclaims against UWIC, leaving only Payday's and Century's crossclaims against SUNZ.  The Court will accordingly dismiss the claims against UWIC without prejudice and dismiss UWIC from this action.

Because the Court finds that Century's and Payday's crossclaims derive from the same case or controversy as the original action, the Court will deny SUNZ's Motion to Dismiss the crossclaims.  Because SUNZ has not met its burden of demonstrating that the parties have an agreement to arbitrate and that the crossclaims fall within the scope of that agreement, the Court will also deny SUNZ's Motion to Compel Arbitration of the crossclaims.

By stipulation of the parties, SUNZ also filed counterclaims against Benchmark; Benchmark in turn filed counterclaims-in-reply against SUNZ and SIS.  SUNZ and SIS have

filed a Motion to Dismiss, or in the Alternative, to Compel Arbitration of Benchmark's counterclaims-in-reply.

The Court finds that Benchmark's counterclaims-in-reply are compulsory replies to SUNZ's permissive counterclaims and will deny SUNZ and SIS's Motion to Dismiss. The Court further finds that SUNZ has failed to demonstrate that these claims are within the scope of an agreement to arbitrate between the parties and will deny the request to compel arbitration of Benchmark's counterclaims-in-reply. SIS filed a separate Motion to Dismiss, or in the Alternative, to Compel Arbitration of Benchmark's crossclaims for indemnification; Benchmark subsequently voluntarily dismissed its crossclaims. The Court will deny SIS's Motion as moot.

## BACKGROUND

I.    **FACTUAL BACKGROUND**

**A.  The Parties**

This action arises out of a dispute between insurance companies. In 2015, Plaintiff Benchmark Insurance Company ("Benchmark") and Defendant SUNZ Insurance Company ("SUNZ") established a partnership to administer an insurance program for large-deductible workers' compensation policies (the "Benchmark/SUNZ Program"). (Civ. No.

20-907, Compl. ¶¶ 10–11, Apr. 9, 2020, Docket No. 1.)[1]  Benchmark appointed SUNZ

Insurance Solutions ("SIS") as its agent to issue workers' compensation policies and

administer the policies on Benchmark's behalf.  (Civ. No. 20-908, Compl. ("Compl.") ¶¶ 1–

2, Apr. 9, 2020, Docket No. 1.)  The large-deductible workers' compensation insurance

policies were sold to professional employer organizations in various states.  (Civ. No. 20-

907, Compl. ¶ 1.)  The insured organizations that are parties to this action ("Defendant-

Insureds") were issued policies from the Benchmark/SUNZ Program and have posted

more collateral than is presently required to secure their obligations.  (Compl. ¶ 9.)  The

Benchmark/SIS relationship ended in 2018 and no new policies have been issued or

renewed since that time, but insureds may still make claims that arose during the

coverage period.  (Compl. ¶ 16.)

### B.  Contracts and Collateral

---

[1] There are multiple concurrent actions related to this dispute.  The pending Motions addressed in this Order are all filed under Docket Civ. No. 20-908 (the "Interpleader Action"), however facts pleaded in the Docket for Civ. No. 20-907 (the "Declaratory Action") are included where relevant to resolution of the Interpleader Action Motions. All documents cited from Docket 20-907 are specified as such.

The Benchmark/SUNZ Program is governed by multiple contracts and agreements between Benchmark, SUNZ, SIS, other SUNZ-affiliates, and the Defendant-Insureds.  Six types of agreements are at the root of the claims addressed in the pending Motions:

(1) Program Manager Agreement ("PMA"): between Benchmark and SIS, under which SIS issued large-deductible policies on Benchmark's behalf and in Benchmark's name, (Civ. No. 20-907, Decl. J. Compl. ¶ 12–13);

(2) Quota Share Reinsurance Contract ("Reinsurance Contract"): between Benchmark and SUNZ, which required SUNZ to accept 100 percent of Benchmark's "Gross Liability" for policies SIS issued on Benchmark's behalf and required SUNZ to post collateral to secure its obligations to Benchmark, (*id.* ¶ 14);

(3) Reinsurance Treaty Trust Agreement ("Trust Agreement"): between Benchmark and SUNZ, which required SUNZ to deposit securities into a trust account at Fifth Third Bank and governed the terms of the trust account's management, (*id.* ¶ 15);

(4) Large Deductible General Agent Agreement ("LDGAA"): between Benchmark and SIS, which required SIS to collect Deductible Collateral from insureds under policies issued by SIS on Benchmark's behalf and to obtain Program Agreements from each insured, (*id.* ¶ 19);

(5) Program Agreements[2] ("Program Agreements" or "LD Agreements"): between Benchmark and the insureds, collected by SIS and addressing Deductible Collateral requirements, claims administration, and other topics, (*id.* ¶ 19); and

---

[2] Payday and Century dispute that the Program Agreements are contracts, referring to them instead as "a quote of the proposed terms of the insurance coverage which SIS, would . . . seek to obtain from [SUNZ] in the form of an issued large deductible workers compensation insurance policy[.]"  (*See e.g.* Payday Crosscl. ¶ 2, June 4, 2020, Docket No. 163.)

(6) <u>Policies and Endorsements (also referred to as "LD Endorsements")</u>: large-deductible workers' compensation insurance policies and endorsements underwritten by SIS on behalf of Benchmark and purchased by insureds, (*id.* ¶¶ 12–13).

These agreements also establish different forms of collateral to insure the parties' obligations to each other.[3]  (Civ. No. 20-907, Compl. ¶¶ 2, 13, 14, 28.)  SUNZ has alleged that Benchmark is "overfunded and over-collateralized," and that Benchmark holds $50.5 million of excess collateral.  (Civ. No. 20-907, Compl. ¶ 28.)  Of particular significance to this action is Deductible Collateral, which the insureds posted to offset their obligations to reimburse Benchmark for deductible claims that Benchmark paid, but for which the insureds are contractually liable.[4]  (Civ. No. 20-907, Compl. ¶ 13.)  Benchmark has determined that it is currently holding $20,533,594 in Excess Deductible Collateral posted by insureds under their various Policies and Program Agreements.  (Compl. ¶¶ 2–3.)

---

[3] The types of collateral include: (1) Quota Share Collateral, posted by SUNZ to secure its obligations to Benchmark under the Reinsurance Contract, (Civ. No. 20-907, Compl. ¶ 14, 28); (2) Deductible Collateral, posted by the insureds to offset insureds' obligations to reimburse Benchmark for deductible claims paid by Benchmark (*id.* ¶ 13, 28); and (3) Stock Collateral, pursuant to the Stock Purchase Agreement between Benchmark and SUNZ, through which SUNZ purchased $2 million of stock in Benchmark Holding Company which could be redeemed to offset SUNZ's obligation to Benchmark under the reinsurance contract (*id.* ¶ 28).

[4] The large-deductible policies that SIS issued to the insureds on Benchmark's behalf had two layers: the Deductible Layer, for which the insured is responsible, and an Above-Deductible Layer, for which Benchmark is responsible.  (*Id.* ¶ 13.)  Benchmark paid claims in the Deductible Layer and then invoiced the insureds for reimbursement but required the insureds to post sufficient cash or cash-equivalent collateral to secure obligations in the Deductible Layer.  (*Id.*)

## II.    PROCEDURAL HISTORY

In early 2019, SUNZ initiated a series of negotiations with Benchmark regarding various types of excess collateral that Benchmark held related to the Benchmark/SUNZ Program.  (Civ. No. 20-907, Compl. ¶¶ 21–24.)  On January 27, 2020, SUNZ served an arbitration demand on Benchmark, seeking broad relief related to Benchmark's collateral holdings and the release of $50.5 million in excess collateral to SUNZ.  (*Id.* ¶¶ 25–27.)  On April 9, 2020, Benchmark filed the Interpleader Action to manage adverse claims to $20,533,594 in excess Deductible collateral.[5]  (Compl. ¶ 4.)

Through the Interpleader Action, Benchmark identified thirty-five entities, the Defendant-Insureds, that purchased insurance policies through the Benchmark/SUNZ Program and may claim an interest to some portion of the $20.5 million excess Deductible Collateral.  Thirty-two of the Defendant-Insureds have disclaimed interest in the excess collateral and have been dismissed from the Interpleader Action; the only remaining Defendant-Insureds are Century, Payday, and Butler.

### A.  Defendant-Insureds' Crossclaims

---

[5] Benchmark also filed a one-count declaratory judgment action seeking to enjoin SUNZ from pursuing arbitration beyond the scope of the arbitration agreements in their contracts (the "Declaratory Action").  (*Id.* ¶ 4.)  The parties are currently engaged in arbitration to resolve disputes related to that action.  (*See* Civ. No. 20-907, Joint Status Report, Nov. 13, 2020, Docket No. 63.)

On June 4, 2020, Defendant-Insureds Century and Payday filed counterclaims for breach of contract against Benchmark and crossclaims for breach of contract against SUNZ. (Payday Crosscl., June 4, 2020, Docket No. 163; Century Crosscl., June 22, 2020, Docket No. 227.)[6] On July 9, 2020, SUNZ filed a Motion to Dismiss, or in the Alternative, to Compel Arbitration of the crossclaims. (Mot. Dismiss Crosscl., July 9, 2020, Docket No. 295.)

Payday and Century (collectively "Crossclaimants") allege that they individually engaged SIS to provide large deductible workers compensation insurance policies, and that SIS presented Crossclaimants with Program Agreements that presented a quote for the proposed terms of the insurance coverage that SIS would seek to obtain from SUNZ. (*See e.g.* Payday Crosscl. ¶ 1–2.) Crossclaimants each subsequently signed insurance policies with SUNZ. (*See e.g. id*. ¶ 5.) Crossclaimants allege that the policies superseded and excluded the Program Agreements from application, but that SUNZ sought to improperly modify the terms of the policies by applying the Program Agreement terms. (*See e.g. id*. ¶¶ 10–14.)

---

[6] Defendant-Insured Butler filed a similar breach of contract counterclaim against Benchmark and crossclaim against UWIC. (Butler Crosscl., June 4, 2020, Docket No. 162.) On December 8, 2020, Butler voluntarily dismissed its crossclaim against UWIC without prejudice. (Stip. Voluntary Dismissal, Dec. 8, 2020, Docket No. 435.) Accordingly, the Court will only address Century's and Payday's remaining crossclaims.

In particular, Crossclaimants allege that SUNZ improperly increased the amount of collateral required under the policies, imposed excessive fees that wrongfully depleted the Crossclaimants' respective collateral funds, and that SUNZ misapplied and misappropriated payments made by Crossclaimants by improperly comingling collateral funds with other funds, and failed to properly account for Crossclaimants' collateral payments.  (*See e.g. id*. ¶¶ 14–15, 19.)  Crossclaimants further allege that SUNZ engaged in negligent claims management practices that resulted in excessive cost containment fees and that SUNZ otherwise depleted their collateral accounts.  (*See e.g. id*. ¶¶ 16, 20.)  Century separately alleges that SUNZ wrongfully cancelled and terminated Century's policy and that SUNZ improperly drew down a $100,000.00 Letter of Credit that Century provided.  (Century Crosscl. ¶¶ 21–22.)

On July 9, 2020, SUNZ filed a Motion to Dismiss, or in the alternative, to Compel Arbitration of, the crossclaims.  (Mot. Dismiss or, in the Alternative, to Compel Arbitration of Crosscls. ("Mot. Dismiss Crosscl."), July 9, 2020, Docket No. 295.)

**B.  Benchmark's Counterclaims-in-Reply**

On May 20, 2020, SUNZ filed a counterclaim for breach of contract against Benchmark, pursuant to a joint stipulation by the parties.  (Countercl. Stip., May 19, 2020, Docket No. 83; SUNZ Countercl., May 20, 2020, Docket No. 88.)  SUNZ's counterclaim alleges Benchmark used funds from the trust account established at Fifth Third Bank to satisfy this Interpleader Action, in violation of the Trust Agreement's limitations on the

use of trust funds.  (SUNZ Countercl. ¶¶ 1–19.)  On July 1, 2020, Benchmark filed an answer to SUNZ's counterclaim and made counterclaims-in-reply.  (Am. Ans. & Countercl.-in-Reply ("Countercl. Reply"), July 1, 2020, Docket No. 286.)

Benchmark's counterclaims-in-reply allege five counts: (1) Breach of the LDGAA by SIS, (Countercl. Reply ¶¶ 43–46); (2) Breach of the PMA by SIS, (*id.* ¶¶ 47–50); (3) Tortious Interference with the LDGAA and PMA by SUNZ, (*id.* ¶¶ 51–53); (4) Breach of Fiduciary Duty by SIS, (*id.* ¶¶ 54–57); (5) Aiding and Abetting Breach of Fiduciary Duty by SUNZ, (*id.* ¶¶ 58–61).

SUNZ and SIS filed a Motion to Dismiss, or in the Alternative, to Compel Arbitration. (Mot. to Dismiss or, in the Alternative, to Compel Arbitration, July 30, 2020, Docket No. 337.)[7]

---

[7] Benchmark's Answers to Butler's, Payday's, and Century's counterclaims included crossclaims for indemnification against SIS.  (Benchmarks Ans. & Crosscls., July 9, 2020, Docket Nos. 291, 292, 293.)  SIS moved to dismiss, or in the alternative, to compel arbitration of Benchmark's crossclaims.  (Mot. Dismiss Crosscl., July 30, 2020, Docket No. 343.)  On August 20, 2020, Benchmark voluntarily dismissed its crossclaims for indemnification against SIS without prejudice.  (Benchmark Not. of Voluntary Dismissal, Aug. 20, 2020, Docket No. 369.)  Accordingly, SIS's Motion is moot and will be denied.

**DISCUSSION**

I.    **STANDARD OF REVIEW**

    **A.  Motion to Dismiss**

"A motion to dismiss pursuant to Rule 12(b)(1) challenges the Court's subject matter jurisdiction and requires the Court to examine whether it has authority to decide the claims." *Damon v. Groteboer*, 937 F. Supp. 2d 1048, 163 (D. Minn. 2013).  In addressing this facial Rule 12(b)(1) attack, the Court "restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (citations omitted).

    **B.  Motion to Compel Arbitration**

The Federal Arbitration Act ("FAA") permits a party who believes that a dispute is subject to arbitration to move for an order compelling arbitration and staying the proceedings.  9 U.S.C. § 3.  On a motion to compel arbitration under the FAA, the Court "does not determine the merits of the substantive issues," but simply "whether the parties have agreed to submit a particular grievance to arbitration[.]" *Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc.*, 516 F.3d 695, 699 (8th Cir. 2008).  When considering such a motion, the Court is therefore limited to determining: (1) whether a valid agreement to arbitrate exists between the parties and, if so, (2) whether the specific

dispute is within the scope of that agreement. *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004). "The party seeking to compel arbitration 'must demonstrate that a valid agreement to arbitrate exists.'" *Pederson v. Donald J. Trump for President, Inc.*, 465 F. Supp. 3d 929, 936 (D. Minn. 2020) (quoting *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 375 (1st Cir. 2011)).

**ANALYSIS**

**I.   SUNZ'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO COMPEL ARBITRATION OF CENTURY'S AND PAYDAY'S CROSSCLAIMS**

**A.   Motion to Dismiss for Lack of Subject Matter Jurisdiction**[8]

SUNZ argues that the Court lacks subject matter jurisdiction over Century's and Payday's crossclaims because these crossclaims are not part of the same case or controversy that is at the root of Benchmark's interpleader action, but rather focus on alleged breaches of contracts between non-Minnesota corporations that are governed by Florida law.

Under Rule 13(g), a crossclaim against a coparty must:

> arise[] out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or . . . relate[] to any property that is the subject matter of the

---

[8] The Motion also asserts that the Court lacks personal jurisdiction over UWIC, but because the crossclaims against UWIC have been voluntarily dismissed, the Court will not address these arguments.

> original litigation.  The crossclaim may include a claim that the
> coparty is or may be liable to the crossclaimant for all or part
> of a claim asserted in the action against the crossclaimant.

Fed. R. Civ. P. 13(g).  The Court may exercise supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  "Claims within the action are part of the same case or controversy if they 'derive from a common nucleus of operative fact.'"  *Myers v. Richland Cty.,* 429 F.3d 740, 746 (8th Cir. 2005) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 725 (1966)).  "A plaintiff's claims derive from a common nucleus of operative fact if the 'claims are such that he would ordinarily be expected to try them all in one judicial proceeding.'"  *OnePoint Sols., LLC v. Borchert,* 486 F.3d 342, 350 (8th Cir. 2007) (quoting *Gibbs,* 383 U.S. at 725).

Century and Payday each make claims to a portion of the excess collateral interpleaded in the original action; their crossclaims against SUNZ for breach of contract lay out the reasons for their alleged entitlement to those interpleaded collateral funds, and also allege that SUNZ engaged in improper inflation, management, and distribution of that collateral, thereby creating additional harms.  In other words, the crossclaims create a basis for Century's and Payday's adverse claims to the interpleaded funds.  Both the original claim and crossclaims are related to distribution of the Deductible Collateral, and because Crossclaimants make almost identical counterclaims against Benchmark related to improper collection and maintenance of that collateral, Crossclaimants present

claims that would be expected to be tried in one judicial proceeding.  *OnePoint Sols.,* 486

F.3d at 350.

SUNZ relies on *State Farm Fire & Casualty Co. v. Tashire*, in which the Supreme Court

found that "interpleader was never intended . . . to be an all-purpose 'bill of peace.'"  386

U.S. 523, 535 (1967).  SUNZ argues that the Crossclaims expand the litigation beyond the

interpleader and are thus barred by *Tashire*.  This is far too expansive a reading of *Tashire*,

which dealt with claims related to a mass tort multiparty bus crash.  *See id.* at 534–36.

While *Tashire* does seek to limit the scope of interpleader actions to efficiently dispense

adverse claims to a fund, "[a]t most, the *Tashire* language might be read as preventing

crossclaims seeking to establish liability in the context of a mass tort rather than as an

across-the-board proscription against crossclaims in interpleader actions."  7 Wright,

Miller & Kane, Fed. Prac. & Proc. Civ. § 1715 (3d ed.)  Accordingly, the Court finds that

*Tashire* does not serve as a bar to Century's and Payday's crossclaims.

**B.  Motion to Compel Arbitration**

In reviewing SUNZ's Motion to Compel Arbitration, the Court considers only whether

a valid agreement to arbitrate exists between the parties and whether the specific dispute

is within the scope of that agreement.  *Pro Tech Indus.*, 377 F.3d at 871.  SUNZ contends

that Payday's and Century's crossclaims are subject to the dispute resolution and forum

selection clauses established in the Program Agreements, which require mediation,

followed by arbitration if mediation is unsuccessful.[9]   Crossclaimants argue that their policies and endorsements superseded the Program Agreements and that the mediation and arbitration clauses are therefore not binding.   Because the dispute between the parties focuses in part on the validity of the Program Agreements themselves, which is at issue in this case, the Court finds that SUNZ has not met its burden at this time of demonstrating that the parties have agreed to submit this dispute to arbitration.   *Express Scripts*, 516 F.3d at 699.   Accordingly, the Court will deny SUNZ's Motion to compel arbitration.

## II.   SUNZ & SIS'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO COMPEL ARBITRATION OF BENCHMARK'S COUNTERCLAIMS-IN-REPLY

### A.  Motion to Dismiss

SUNZ asserts that Benchmark's counterclaims-in-reply are procedurally improper under Rule 7.  A counterclaim-in-reply is generally only permitted "when it is a compulsory reply to a permissive counterclaim."  *Feed Mgmt. Sys., Inc. v. Brill*, 518 F. Supp. 2d 1094, 1096 (D. Minn. 2007).   SUNZ characterizes its own counterclaims as compulsory and Benchmark's as permissive and thus improper.   However, SUNZ's counterclaim was brought pursuant to Rules 13(e) and 15(d), two rules that recognize the Court's discretion

---

[9] (*See e.g.*, Payday Crosscl., Ex. A. at 12–13 § 12, June 4, 2020, Docket No. 163-1.)

**to permit** a party to file supplemental pleadings. *See* Fed R. Civ. P. 13(e), 15(d). Counterclaims that matured or were acquired by the pleader after service of their pleadings "are, by the terms of Rule 13(e), permissive." *Am. Home Assur. Co. v. Pope*, 487 F.3d 590, 604 n.6 (8th Cir. 2007) (citation omitted). Having found SUNZ's counterclaims permissive, the Court must determine whether Benchmark's claims are permissive or compulsory.

Rule 13(a) defines a compulsory counterclaim as one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" and "does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1). The Eighth Circuit has adopted four "varying tests for determining whether the claim in question arose out of the same transaction or occurrence, within the meaning of Rule 13(a)[.]" *Cochrane v. Iowa Beef Processors, Inc.*, 596 F.2d 254, 264 (8th Cir. 1979), *cert. denied sub nom.*, 442 U.S. 921 (1979). These tests include: (i) whether the issues of fact and law raised by the claim and counterclaim are largely the same; (ii) whether res judicata would bar a subsequent suit on the defendant's claim; (iii) whether the evidence to support or refute the counterclaims would be substantially the same as the plaintiff's claim; and (iv) whether there is a logical relation between the claim and counterclaim. *Id.*

The Eighth Circuit has often used the flexible "logical relation" test to efficiently join related claims into one proceeding. *Tullos v. Parks*, 915 F.2d 1192, 1195 (8th Cir. 1990).

-16-

There is a logical relation between SUNZ's claim that Benchmark violated the Trust Agreement and Benchmark's counterclaim that SUNZ's and SIS's breaches of the other governing contracts establish defenses for Benchmark's conduct related to the Trust Agreement. On that test alone, the Court could find Benchmark's counterclaims compulsory.

However, the facts of this case are sufficiently complex that the logical relation test alone risks inflating the interpleader action beyond its procedural function. *See Protective Life Ins. Co. v. Kridner*, No. 12-582, 2013 WL 1249205, at *2 (D. Minn. Mar. 27, 2013) (quoting *Wittry v. Nw. Mut. Life Ins. Co.*, 727 F. Supp. 487, 499–500 (D. Minn. 1989) ("Interpleader is a procedural device that allows a party holding money or property, concededly belonging to another, to join in a single suit two or more parties asserting mutually exclusive claims to the fund.")).

Allowing both SUNZ's counterclaims and Benchmark's counterclaims-in-reply to proceed does risk excessive expansion of the interpleader proceedings and jeopardizing efficient dispensation of the interpleaded funds. The Court is persuaded, however, that if it were to bar Benchmark's counterclaims-in-reply while SUNZ's counterclaims proceeded, it would improperly constrain Benchmark's defenses and could create a res judicata problem for Benchmark going forward. SUNZ's counterclaim introduced facts and questions of law related to the Trust Agreement into the Interpleader Action. Developing a record sufficient to adjudicate the dispute over those obligations will include

-17-

facts related to the other contracts that govern the relationships between Benchmark, SUNZ, SIS, and the Defendant-Insureds.  The Court will thus find that Benchmark's counterclaims-in-reply are compulsory and may proceed.[10]

### B.  Motion to Compel Arbitration

As with the crossclaims, Benchmark and SUNZ dispute which contracts are operative for the purposes of resolving this dispute.[11]  The parties have agreed to arbitrate claims

---

[10] SUNZ and SIS also argue that the Court cannot exercise jurisdiction over SIS, because SIS has filed a declaration disclaiming interest in the interpleaded funds.  This argument is unavailing.  The Court may decline to exercise jurisdiction over parties that disclaim interest in an interpleader action where the Court's jurisdiction is based solely upon the loosened jurisdictional requirements of the interpleader statute, (28 U.S.C. § 1335; 28 U.S.C. § 2361).  *See e.g. Gaines v. Sunray Oil Co.*, 539 F.2d 1136, 1142–43 (8th Cir. 1967).  That is not the case here.  The Court retains jurisdiction pursuant to 28 U.S.C. § 1332, and SIS does not dispute that it is subject to personal jurisdiction in this Court.  Ultimately, SUNZ and SIS's argument is less about jurisdiction, strictly speaking, than it is about defining the scope of the Interpleader Action.

[11] SUNZ argues that Benchmark should be compelled to arbitrate its counterclaims-in-reply because they are rooted in the Program Manager Agreement and the Reinsurance Contract, which both contain arbitration clauses.  Disputes related to the Reinsurance Contract are currently being arbitrated, as ordered in the Declaratory Action.  (*See* Civ. No. 20-907, Order, June 3, 2020, Docket No. 57.)  Benchmark replies that it did not frame its counterclaims-in-reply around any particular contract, but rather focused on the collection and disposition of insureds' Deductible Collateral previously held in the Trust Account.  Because the collection and disposition of insureds' Deductible Collateral is primarily governed by the LDGAA, which requires that disputes be litigated in Minnesota state or federal court, Benchmark opposes SUNZ's arbitration demand.

arising out of the PMA and the Reinsurance Contract, but the LDGAA requires that claims be brought in Minnesota state or federal court, and the Trust Agreement does not contain an arbitration clause.  While it is possible that Benchmark's counterclaims-in-reply related to the PMA will ultimately be subject to the PMA's arbitration clause, the Court is not convinced that the present dispute falls within the scope of that agreement.  Accordingly, the Court finds that SUNZ has not met its burden of demonstrating that Benchmark agreed to submit its dispute about the collection, management, and dispensation of Deductible Collateral to arbitration.

## CONCLUSION

The Court will deny the pending Motions to Dismiss and Motions to Compel Arbitration.  However, question arises concerning whether the current alignment of lawsuits and parties is conducive to prompt resolution of these claims.  The focus should be on expeditiously resolving distribution of the interpleader funds in the amounts that were originally allocated to each remaining Defendant.  To address this issue, the Court will order the parties to confer with the Magistrate Judge to determine whether realignment of the claims would better serve the efficient resolution of the Interpleader Action as well as the parties' other claims.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1. Pursuant to the Joint Stipulation voluntarily dismissing Butler America Holdiss, Inc.'s Crossclaim against United Wisconsin Insurance Company without prejudice and without costs and disbursements [Docket No. 435], United Wisconsin Insurance Company is **DISMISSED**;

2. United Wisconsin Insurance Company is **DISMISSED FROM THIS ACTION** and may have and recover nothing of the interpleaded funds;

3. SUNZ's Insurance Company's Motion to Dismiss, or in the Alternative, Compel Arbitration of Crossclaims [Docket No. 295] is **DENIED** as to Century Employer Organization, LLC's and Payday, Inc.'s Crossclaims;

4. SUNZ Insurance Company and SUNZ Insurance Solutions, LLC's Motion to Dismiss, or in the Alternative, Compel Arbitration of Benchmark's Counterclaims-in-Reply [Docket No. 337] is **DENIED**; and

5. SUNZ Insurance Solutions, LLC's Motion to Dismiss, or in the Alternative, Compel Arbitration of Crossclaims for Indemnification [Docket No. 343] is **DENIED as moot**.

DATED:  February 23, 2021
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
Chief Judge
United States District Court

-20-